**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID ANTHONY HARRIS,**

        **Petitioner,**

   **v.**                                        **CIVIL ACTION NO. 3:07cv163**
                                                       **(Judge Bailey)**

**WARDEN JOE DRIVER,**

        **Respondent.**

**REPORT AND RECOMMENDATION**

**I. BACKGROUND**

On December 12, 2007, the *pro se* petitioner, David Harris, an inmate at USP Hazelton[1] in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order from this court vacating three incident reports which were generated while he was incarcerated at FCI Beckley. The petitioner further requests that the court instruct the DHO to have the petitioner undergo a mental evaluation before any further disciplinary hearings are conducted. On February 11, 2008, the petitioner paid the required $5.00 filing fee. By Order entered on February 22, 2008, the court directed the respondent to show cause why the petition should not be granted. On April 24, 2008, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On April 28, 2008, a Roseboro Notice was issued and on May 28,

---

[1] Harris has since been transferred to the USP Lee in Jonesville, Virginia.. However, jurisdiction is determined at the time an action is filed, and subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction. U.S. v. Edwards, 27 F.3d 564 (4th Cir. 1994).

2008, the petitioner filed a reply.

## II. FACTS

### A. Incident Report No. 1542156

On December 6, 2006, Senior Officer Specialist J. Richmond ("Richmond") prepared an Incident Report charging the petitioner with Code Violation 203, Threatening another with bodily harm and Code Violation 312, Insolence towards a staff member. The report indicates that on December 6, 2006, Richmond responded to a duress alarm from a cell which was occupied by the petitioner. Richmond asked the petitioner why he had hit the duress alarm and if he was "O.K." Richmond then asked the petitioner if he needed to see Health Services. The petitioner responded by saying, "I will kill you when I get out and then I will f**k you. You punk ass bitch." (Doc. 29-4, p. 1).

A copy of the incident report was delivered to the petitioner on December 6, 2006 at 2:00 p.m., one hour after the incident took place. (Doc. 29-4, p. 1). On December 7, 2006 at 10:25 a.m., the investigating officer, E. Stuart ("Stuart"), advised the petitioner of his right to remain silent. The petitioner refused to acknowledge Stuart and refused to make a statement. Furthermore, he would not come out of his cell in order to have the incident report investigated. Because the petitioner refused to come out of his cell or acknowledge him, Stuart deemed the report true as written and forwarded it to the Unit Disciplinary Committee ("UDC") for further action. (Doc. 29-4, p. 2). At the UDC hearing, the petitioner indicated that he had no memory of the incident and wanted to be seen by psychology. Given the severity of the charges, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that the petitioner be sanctioned with a loss of visitation privileges in addition to any other sanctions the DHO may impose. (Doc. 29-4, p. 1).

The petitioner attended the DHO hearing on December 21, 2006 at 8:25 a.m. As requested, the petitioner was afforded a staff representative from the psychology department, Dr. Murphy. In addition, P.A. Cooper, was summoned as a witness at the petitioner's request. The petitioner denied threatening Richmond. However, the DHO found that the petitioner had committed Prohibited Act Code 203, Threatening Another with Bodily Harm. The DHO sanctioned the petitioner by disallowing 27 days of Good Conduct Time and suspending his telephone privileges for six months.

**B. Incident Report Number 1479139**

On December 13, 2006, an incident report was prepared by Stuart charging the petitioner with Code violation 203, Refusing an order and Code 307, Threatening another with bodily harm. Stuart indicated in his report that the petitioner refused to come out of the recreation cage in the Special Housing Unit ("SHU") and refused to be placed in restraints to come in from the recreation area. After some discussion, Stuart gave the petitioner a direct order to submit to restraints and he replied, "You don't get it, I am not coming off of the recreation yard and I have the finances to find you or any other officer." A copy of the incident report was delivered to the petitioner on December 14, 2006 at 8:27 a.m. (Doc. 29-9, p. 1).

The investigating officer, K. Day, ("Day") advised the petitioner of his rights on December 14, 2006, when he delivered him the incident report. With regard to the report, the petitioner indicated that he had nothing to say and wanted to talk to Psychology. Based on the report as written, and the fact that the staff member had nothing to gain by falsifying the report, Day found the charges to be warranted and referred the matter to the UDC. (Doc. 29-9, p. 2). At the UDC meeting, the petitioner indicated that he didn't remember anything and needed to see the "psych." Based on the seriousness of the offense, the UDC referred the matter to the DHO for further hearing with a notation that if the petitioner were found guilty, sanctions would be required that were not

3

available to it. (Doc. 29-9, p. 1).

On December 14, 2006, the petitioner was notified of his hearing before the DHO. The petitioner again requested that a member of the Psychology Department serve as his staff representative, but he did not request any witnesses to testify on his behalf. The petitioner was unable to sign the Notice of Disciplinary Hearing because he was in restraints at the time of notification. (Doc. 29-10). On December 14, 2006, staff Psychologist, Dr. Murry, acknowledged that he had reviewed the duties of a staff representative and agreed to serve in such capacity. (Doc. 29-12). On December 21, 2006, the DHO advised the petitioner of his right to appear at th DHO hearing. The petitioner declined to be present at the hearing and refused to sign the waiver. Dr, Murry witnessed the petitioner being advised of his rights and refusing to attend his hearing.[2] (Doc. 29-13).

The DHO hearing was held on December 21, 2006. The petitioner chose not to appear, but staff psychologist, Dr. Murry, was present. The DHO found that the petitioner had committed the prohibited act of Threatening Another with Bodily Harm, in violation of Code 203 and Refusing to Obey an Order, in violation of Code 307. The DHO sanctioned the petitioner with the loss of twenty-seven (27) days of Good Conduct Time, the loss of telephone privileges for twelve (12) months, and the forfeiture of sixty days of Non-Vested Good Conduct Time. (Doc. 29-14, p.3).

## C. Incident Report No. 1546408

On December 18, 2006, Senior Officer J. Brown ("Brown") prepared an incident report charging the petitioner with Threatening Staff with Bodily Harm in violation of Code 203. The

---

[2]The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear. A waiver may be in writing, signed by the inmate, or, if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to be present at the hearing. 28 C.F.R. § 541.17(d).

4

report indicates that Brown was working at his assigned post in the SHU and escorting the petitioner back to his assigned cell when he made the following statement, "I'm getten a visit from my sister Saturday and she's gonna get me some license plate numbers so I can take care of some of you officers. The Incident Report was delivered to the petitioner on December 18, 2006. (Doc. 29-15, p. 1). After being advised of his right to remain silent, the petitioner indicated to the investigating officer that the incident report was not true as written by the reporting staff member. (Doc. 29-15, p. 2). The petitioner refused to attend the UDC hearing or to request witnesses, and the UDC referred the matter to the DHO for further hearing. (Doc. 29-15, p. 1).

The DHO hearing was conducted on December 21, 2006. The petitioner refused to attend the hearing and also refused to sign a Waiver of Appearance Form. (Doc. 29-18, p. 1). The DHO found that the petitioner committed the prohibited act of Threatening Another with Bodily Harm, in violation of Code 203. The DHO sanctioned the petitioner with the loss of twenty-seven (27) days of Good Conduct Time, loss of phone privileges for six (6) months, loss of visiting privileges for six (6) months, and loss of commissary privileges for six (6) months.

## III. CONTENTIONS OF THE PARTIES

The petitioner alleges that his due process rights were violated by the DHO in failing to refer him to a mental health professional. The respondent argues that the petitioner was afforded all the due process rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974). In addition, the respondent argues that the evidence relied upon by the DHO was sufficient for a finding of guilt in the petitioner's three disciplinary hearings. Finally, the respondent argues that the petitioner was not entitled to a mental evaluation for a determination as to whether he was responsible or competent because he exhibited no symptoms of mental illness.

## IV. STANDARD OF REVIEW

A. **Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the instant case, the petitioner does not allege that the disciplinary proceedings violated

this procedural protocol. Rather, he argues that his due process rights were violated by the DHO because she did not allow him to receive a mental evaluation. More specifically, he argues that the DHO refused to request psychological services after he told her he did not understand and did not remember anything about the incidents. (Doc. 1).

28 C.F.R. § 541.10 provides in pertinent part as follows:

> (6) If it appears at any stage of the disciplinary process that an inmate is mentally ill, staff shall refer the inmate to a mental health professional for determination of whether the inmate is responsible for his conduct or is incompetent. Staff may take no disciplinary action against an inmate whom mental health staff determines to be incompetent or not responsible for his conduct.
>
> (I) A person is not responsible for his conduct if, at the time of the conduct, the person, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. When a person is determined not responsible for his conduct, the Incident Report is to show as a finding that the person did not commit the prohibited act because that person was found not to be mentally responsible for his conduct.
>
> (ii) A person is incompetent if that person lacks the ability to understand the nature of the disciplinary proceedings, or to assist in his defense at the proceedings. When a person is determined incompetent, the disciplinary proceedings shall be postponed until such time as the inmate is able to understand the nature of the disciplinary proceedings and to assist in his defense at those proceedings. If competency is not restored within a reasonable period of time, the Incident Report is to show as a finding that the inmate is incompetent to assist in his or her defense at the disciplinary proceedings.

Clearly, the mere fact that the petitioner stated that he did not recall the incidents and that he wanted to see someone from the psychology staff, does not, in of itself, give rise to the appearance that he is mentally ill. Although the petitioner requested a member of the Psychology Staff to appear as his staff representative at the first two hearings, he did not specifically request psychological evaluation or treatment. Furthermore, the DHO has provided a Declaration in which she indicates

8

that "[a]t no time during Mr. Harris' first DHO hearing did I observe Mr. Harris exhibiting any behavior indicating he was suffering from mental illness. At no time did Mr. Harris exhibit any behavior indicating he was in any way unfit or incompetent to proceed with the hearing. If he had exhibited any such behavior or symptoms, I would have stopped the hearing and asked Psychological Services to perform a competency evaluation on Mr. Harris. Furthermore, Mr. Harris' staff representative, Dr. Murry, informed me that Mr. Harris had been evaluated by psychology staff. Dr. Murry did not express to me that Mr. Harris was incompetent to proceed with the hearing." (Doc. 29-2, p. 6). In addition to the Declaration of the DHO, the respondent has also tendered Declarations from Dr. William Michael Murry, staff psychologist and Dr. Kathryn McDaniel, staff psychologist, both of whom are employed by the BOP at FCI Beckley.

In his Declaration, Dr. Murry details his contacts with the petitioner on November 22, 2006, when he saw him for a routine screening assessment in the SHU; on December 14, 2006, when he appeared as his staff representative at UDC hearing; on December 15, 2006, when he appeared as his staff representative at the DHO hearing; and on December 21, 2006, when he saw him at the second DHO hearing, and later that same date for a suicide risk assessment. Dr. Harris notes that the petitioner "advised him that the reason he requested a psychologist as a staff representative was because he planned to assert a defense which involved his 'psychological problems," and could not remember the incident cited in the report." (Doc. 29-19, p. 3). However, contrary to the petitioner's assertions to him that he had memory problems all his life, Dr. Murry notes that the petitioner was able to discuss with him disciplinary policy in detail. In addition, Dr. Harris notes that the petitioner appeared to have a good memory for disciplinary policy and laws that he had studied and that it was clear that he had a good ability to read, comprehend, and remember disciplinary policy. Dr. Harris notes that the petitioner showed no signs of impaired cognitive skills during the hearing.

9

Furthermore, Dr. Harris notes that it his impression that the petitioner was competent to represent himself at the time of the hearing, and at no point during his interactions with him, did he observe any symptoms which indicated that the petitioner was currently suffering from cognitive functional impairment. Finally, Dr. Harris notes his impression that the petitioner has no problem with memory for any issue he wants to remember. (Doc. 29-19, pp. 1-6).

In her Declaration, Dr. McDaniel details her interactions with the petitioner on December 10, 2006, when she met with him during a Crisis Intervention Session at his request; on December 14, 2006, when she conducted a brief counseling session with him; on December 18, 2006, when she completed a second interview at the petitioner's request; and on December 21, 2006, when she conducted a third interview with him. Dr. McDaniel concludes her Declaration as follows: "At no time during my interactions with Mr. Harris in December 2006, did I observe any significant mental health symptoms, During my interviews Mr. Harris never exhibited any symptoms or behaviors which caused me to believe that he was either incompetent or suffering from mental illness that would have interfered with his ability to proceed to disciplinary hearing. If I had seen such symptoms or indicators, I would have performed or requested a competency evaluation for Mr. Harris." (Doc. 29-20, p. 5).

In conclusion, the record before the Court clearly establishes that the petitioner was provided due process as contemplated by <u>Wolff</u>. Not only was the petitioner provided all the due process rights required by <u>Wolf</u>, the findings made by the DHO in all three disciplinary hearings are sufficient to support the finding that the petitioner violated the Disciplinary Code as charged. Finally, as to the petitioner's sole allegation that he was entitled to a referral to a mental health professional prior to his DHO hearings, the record is devoid of any evidence that would led any staff member to believe that he was mentally ill.

## IV. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 29, 2008

        /s/ James E. Seibert
       JAMES E. SEIBERT
       UNITED STATES MAGISTRATE JUDGE