# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**DAVID ANTHONY HARRIS,**

    Petitioner,

v.                                                                      Civil Action No. 3:07CV163
                                                                                               (BAILEY)

**WARDEN JOE DRIVER,**

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

I.    <u>Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation [Doc. 35] on the Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] and the petitioner's corresponding objections [Doc. 38]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections to the magistrate judge's proposed findings and recommendation permits the district court to review the recommendation under the standards that the district court believes are appropriate and, under these circumstances, the parties' right to *de novo* review is waived. See ***Webb v. Califano***, 468 F. Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to the portions of the report and recommendation to which the petitioner objected. The remaining portions of the report and recommendation will be reviewed for clear error. As a result, it is the opinion of this Court

that the magistrate judge's **Report and Recommendation [Doc. 35]** should be, and the same is, hereby **ORDERED ADOPTED**.

II.     Factual and Procedural Background

On December 12, 2007, the *pro se* petitioner, David Harris, an inmate now housed at USP Lee filed an Application for Habeas Corpus under 28 U.S.C. § 2241, in which he seeks an order from this Court vacating three incident reports[1] which were generated while he was incarcerated at FCI Beckley. The petition also seeks this Court to instruct the Disciplinary Hearing Officer ("DHO") to have him undergo a mental evaluation before any further disciplinary hearings are conducted.

Essentially, the petitioner alleges that his due process rights were violated by the DHO by her failure to refer him to a mental health professional at various times relevant to the three incidents after he told her he did not understand and did not remember anything about the incidents. The respondent argues that the petitioner was afforded all the due process rights required by the Supreme Court in ***Wolff v. McDonnell***, 418 U.S. 539 (1974). In addition, the respondent argues that the evidence relied upon by the DHO was sufficient for a finding of guilt in the petitioner's three disciplinary hearings. Finally, the respondent argues that the petitioner was not entitled to a mental evaluation for a determination as to whether he was responsible or competent because he exhibited no symptoms of mental illness.

III.    Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[1] For detailed descriptions of the three Incident Reports (Nos. 1542156, 1479139, and 1546408), see the magistrate judge's Report and Recommendation [Doc. 35].

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Moreover, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

IV. Discussion

As the magistrate judge correctly stated in his R & R, prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings." **Wolff v. McDonnell**, 418 U.S. 539,

556 (1974). On this note, the petitioner objects to the fact that he had no legal representation, and argues that the Court should not hold this against him. He further alleges an ambiguous claim of discrimination. This Court finds that the petitioner was indeed not entitled to legal representation, but assures him that this Court would never hold prejudice against him for the same. Where, as here, a prison disciplinary hearing may result in the loss of good time credit, *Wolff* holds that due process requires the following:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id*. at 564-571.

In the instant case, the petitioner does not allege that the disciplinary proceedings violated this procedural protocol. Rather, he argues that his due process rights were

violated by the DHO because she did not allow him to receive a mental evaluation. More specifically, he argues that the DHO refused to request psychological services after he told her he did not understand and did not remember anything about the incidents. *See* Doc. 1.

> 28 C.F.R. § 541.10 provides in pertinent part as follows:
>
> (6) If it appears at any stage of the disciplinary process that an inmate is mentally ill, staff shall refer the inmate to a mental health professional for determination of whether the inmate is responsible for his conduct or is incompetent. Staff may take no disciplinary action against an inmate whom mental health staff determines to be incompetent or not responsible for his conduct.
>
> (I) A person is not responsible for his conduct if, at the time of the conduct, the person, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. When a person is determined not responsible for his conduct, the Incident Report is to show as a finding that the person did not commit the prohibited act because that person was found not to be mentally responsible for his conduct.
>
> (ii) A person is incompetent if that person lacks the ability to understand the nature of the disciplinary proceedings, or to assist in his defense at the proceedings. When a person is determined incompetent, the disciplinary proceedings shall be postponed until such time as the inmate is able to understand the nature of the disciplinary proceedings and to

assist in his defense at those proceedings. If competency is not restored within a reasonable period of time, the Incident Report is to show as a finding that the inmate is incompetent to assist in his or her defense at the disciplinary proceedings.

As stated in the R & R, the mere fact that the petitioner stated that he did not recall the incidents and that he wanted to see someone from the psychology staff, does not, in of itself, give rise to the appearance that he is mentally ill. In the petitioner's objections, he simply states that "petitioner argues that, his memory loss should be taken seriously. All the dates the Dr. spoke with him, did not concern the incident reports." Indeed, although the petitioner requested a member of the Psychology Staff to appear as his staff representative at the first two hearings, he did not specifically request psychological evaluation or treatment. Importantly, the DHO has provided a Declaration in which she indicates that

> "[a]t no time during Mr. Harris' first DHO hearing did I observe Mr. Harris exhibiting any behavior indicating he was suffering from mental illness. At no time did Mr. Harris exhibit any behavior indicating he was in any way unfit or incompetent to proceed with the hearing. If he had exhibited any such behavior or symptoms, I would have stopped the hearing and asked Psychological Services to perform a competency evaluation on Mr. Harris. Furthermore, Mr. Harris' staff representative, Dr. Murry, informed me that Mr. Harris had been evaluated by psychology staff. Dr. Murry did not express to me that Mr. Harris was incompetent to proceed with the hearing."

*See* Doc. 29-2, p. 6.

In addition to the Declaration of the DHO, the respondent has also tendered Declarations from Dr. William Michael Murry, staff psychologist and Dr. Kathryn McDaniel, staff psychologist, both of whom are employed by the BOP at FCI Beckley. In his Declaration, Dr. Murry details his contacts with the petitioner on November 22, 2006, when he saw him for a routine screening assessment in the SHU; on December 14, 2006, when he appeared as his staff representative at UDC hearing; on December 15, 2006, when he appeared as his staff representative at the DHO hearing; and on December 21, 2006, when he saw him at the second DHO hearing, and later that same date for a suicide risk assessment. Dr. Murry notes that the petitioner "advised him that the reason he requested a psychologist as a staff representative was because he planned to assert a defense which involved his 'psychological problems," and "could not remember the incident cited in the report." *See* Doc. 29-19, p. 3. However, contrary to the petitioner's assertions to him that he had memory problems all his life, Dr. Murry notes that the petitioner was able to discuss with him disciplinary policy in detail. In addition, Dr. Murry notes that the petitioner appeared to have a good memory for disciplinary policy and laws that he had studied and that it was clear that he had a good ability to read, comprehend, and remember disciplinary policy. Dr. Murry notes that the petitioner showed no signs of impaired cognitive skills during the hearing.

Furthermore, Dr. Murry notes that it is his impression that the petitioner was competent to represent himself at the time of the hearing, and at no point during his interactions with him did he observe any symptoms which indicated that the petitioner was currently suffering from cognitive functional impairment. Finally, Dr. Murry notes his

impression that the petitioner has no problem with memory for any issue he wants to remember.  *See* Doc. 29-19, pp. 1-6.

In her Declaration, Dr. McDaniel details her interactions with the petitioner on December 10, 2006, when she met with him during a Crisis Intervention Session at his request; on December 14, 2006, when she conducted a brief counseling session with him; on December 18, 2006, when she completed a second interview at the petitioner's request; and on December 21, 2006, when she conducted a third interview with him. Dr. McDaniel concludes her Declaration as follows:

> "At no time during my interactions with Mr. Harris in December 2006, did I observe any significant mental health symptoms.  During my interviews Mr. Harris never exhibited any symptoms or behaviors which caused me to believe that he was either incompetent or suffering from mental illness that would have interfered with his ability to proceed to disciplinary hearing. If I had seen such symptoms or indicators, I would have performed or requested a competency evaluation for Mr. Harris."
>
> *See* Doc. 29-20, p. 5.

This Court agrees with the magistrate judge's findings that the record before the Court clearly establishes that the petitioner was provided due process as contemplated by ***Wolff***.  Not only was the petitioner provided all the due process rights required by ***Wolff***, the findings made by the DHO in all three disciplinary hearings are sufficient to support the finding that the petitioner violated the Disciplinary Code as charged.  As to the petitioner's sole allegation that he was entitled to a referral to a mental health professional prior to his DHO hearings, the record is devoid of any evidence that would lead any staff member to

believe that he was mentally ill.

Finally, in his objections the petitioner accuses the magistrate judge of circumventing C.F.R. policy by not permitting him to present witnesses and documentary evidence in his defense. The petitioner, however, fails to state what additional evidence he would intend to proffer if given the chance. He does manage to restate the same self-serving assertions that "when he stated to the DHO that he couldn't remember anything . . . that in itself justified documentary evidence." The petitioner, by his own admission, states that he made this same argument which the magistrate properly disposed of in his R & R. The only additional information the petitioner provides in this regard is the bald assertion that he spoke to the DHO at his new facility, USP Lee County, who allegedly told him that if a prisoner indicates he can't remember, that he personally would have ceased the hearing and sought the psychological department.

Indeed, the petitioner claims in his objections that the staff at FCI Beckley was conspiring against him in a cover-up of sorts; therefore he seeks a second opinion from the staff at USP Lee, where he is currently housed. This Court will not entertain such a request. The staff at USP Lee cannot make determinations as to the petitioner's mental well-being at the time of the incidents which occurred while incarcerated in FCI Beckley. This Court has reviewed the record and finds that there was significant investigation into the petitioner's mental health prior to determining that an evaluation was not warranted. Accordingly, this Court disagrees with the contention that the petitioner's arguments were not sufficiently weighed by the magistrate judge and finds no error with that finding.

V.  Conclusion

For the foregoing reasons, and those more fully contained in the Report and

Recommendation [Doc. 35], the Court hereby **ORDERS** as follows:

1. That the **Magistrate Judge's Report and Recommendation [Doc. 35]** is **ADOPTED**; that

2. The Motion to Dismiss or, in the Alternative, For Summary Judgment **[Doc. 28]** be **GRANTED**; and that

3. The Petition for Writ of Habeas Corpus **[Doc. 1]** is **DENIED** .

As a final matter, it is **ORDERED** that this case be **CLOSED** and **STRICKEN** from the active docket of the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and to mail a copy to the petitioner.

**DATED**: September 16, 2008.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE